**Regina Fay LUCAS, individually and as Executrix of the Estate of Sclina Fay Flowers, Deceased, Archie Mack Flowers, Renee Harkey, Delilah Arolfo, Archie Earl Flowers and Bessie Baughman, Appellants,**

v.

**CLEARLAKE SENIOR LIVING LIMITED PARTNERSHIP d/b/a Rosemont at Clear Lake Senior Living Community, Appellee.**

No. 14–10–00544–CV.

Court of Appeals of Texas, Houston (14th Dist.).

July 12, 2011.

Tobias Anthony Cole, Mark Omar Midani, Houston, for appellants.

Gwendolyn S. Frost, Michelle Ruth Anders Scheiffele, Houston, for appellee.

Panel consists of Chief Justice HEDGES and Justices SEYMORE and BOYCE.

1. Section 74.351 of the Texas Civil Practice and Remedies Code requires a health care liability claimant to serve one or more expert reports on each defendant no later than 120 days after the original petition is filed, or later by written agreement between the parties. *See* Tex. Civ. Prac. & Rem.Code Ann. § 74.351(a) (West 2011).

## OPINION

ADELE HEDGES, Chief Justice.

Appellants Regina Fay Lucas, individually and as executrix of the estate of Sclina Fay Flowers, deceased, Archie Mack Flowers, Renee Harkey, Delilah Arolfo, Archie Earl Flowers, and Bessie Baughman (collectively "Lucas") appeal from the trial court's order granting the motion of appellee, Clearlake Senior Living Limited Partnership d/b/a Rosemont at Clear Lake Senior Living Community ("Rosemont"), to dismiss appellants' health care liability claim. Lucas contends that the trial court abused its discretion in granting Rosemont's amended motion to dismiss because the only objections upon which the court could base its ruling were either waived or withdrawn. We affirm.

### I. Factual and Procedural Background

On February 28, 2008, while a resident at Rosemont, an assisted-living facility, eighty year old Sclina Fay Flowers died. On January 28, 2009, Lucas filed a health care liability lawsuit against Rosemont alleging that, while in Rosemont's care, Ms. Flowers was attacked by ants on January 29 and 30, 2007, and that following the second attack, she collapsed to the floor and sustained injuries that later resulted in her death. Rosemont filed its answer on February 25, 2009.

Pursuant to a written agreement, the parties agreed to extend the deadline for Lucas to serve her expert report[1] until January 14, 2010.[2] On January 13, 2010,

2. During the time period relevant to this case, Rosemont was a receivership entity in bankruptcy proceedings in The United States Bankruptcy Court for the District of Oregon. On April 27, 2009, Rosemont filed a motion to stay the state proceedings based on the automatic stay provisions of the federal bankruptcy code. On August 5, 2009, Lucas filed a

Lucas served Rosemont with the expert report of Robbie L. Murphy, R.N., B.S.N.

On January 26, 2010, Rosemont filed a motion to dismiss asserting that Murphy's report failed to comply with the substantive requirements of section 74.351 of the Texas Civil Practice and Remedies Code. Specifically, Rosemont objected to the report on the grounds that it failed to (1) explain how Rosemont allegedly breached the applicable standards of care; (2) state the causal relationship between Rosemont's breach and Ms. Flowers's injuries and subsequent death; and (3) include Murphy's curriculum vitae. On January 28, 2010, Lucas filed and served Rosemont with Murphy's curriculum vitae.

On February 22, 2010, Lucas filed her response to Rosemont's motion to dismiss. In her response, Lucas argued that (1) Murphy's report sufficiently addressed Rosemont's breach of the applicable standards of care and the causal relationship between the breach and Ms. Flowers's injuries and death; (2) her failure to attach Murphy's curriculum vitae to the expert report was not fatal because (a) the trial court could grant a thirty-day extension to Lucas to correct the deficiency and (b) Murphy's qualifications were set out in her expert report; and (3) Rosemont waived any objection to Murphy's qualifications to testify regarding causation by failing to object within twenty-one days of service. On March 1, 2010, the trial court issued an order granting Lucas thirty days from the date of the order to cure the deficiencies addressed in Rosemont's motion to dismiss.

On March 30, 2010, Lucas served Rosemont with Murphy's amended expert report. On April 9, 2010, Rosemont filed its amended motion to dismiss in which it argued that Murphy, as a nurse, was not qualified to render an opinion regarding causation. On April 21, 2010, Rosemont filed a motion to limit expert testimony in which it requested that the court exclude Murphy's testimony regarding the causal relationship between Rosemont's alleged breach and Ms. Flowers's injuries and death on the basis that Murphy was not qualified to render an expert opinion on causation.

On April 26, 2010, Lucas filed her response to Rosemont's amended motion to dismiss. In her response, she contended that (1) Rosemont had waived any objection to Murphy's qualifications by failing to object within twenty-one days of being served with Murphy's original report and curriculum vitae and (2) Rosemont had withdrawn and, thus, waived its objection to the sufficiency of Murphy's opinions regarding breach and causation raised in its original motion to dismiss because it omitted the objections in its amended motion to dismiss. That same day, the court held a hearing on Rosemont's amended motion to dismiss. At the conclusion of the hearing, the court ordered the parties to submit additional briefing specifically addressing Lucas's argument that Rosemont had waived its objection to Murphy's qualifications.

On April 28, 2010, Rosemont filed its reply to Lucas's response to its amended motion to dismiss. In its reply, Rosemont argued that it had not waived its objection to Murphy's qualifications by failing to object within twenty-one days following service of Murphy's original report because Murphy did not include an opinion regarding causation in her original report. Instead, Rosemont argued, Murphy attempted to offer an opinion regarding causation only in her amended report, and Rosemont

motion to obtain relief from the automatic stay. On December 15, 2009, the bankruptcy court entered an order granting Lucas relief from the stay.

had timely objected to the "new" testimony. On April 30, 2010, Lucas filed a sur-reply. On May 13, 2010, the trial court granted Rosemont's amended motion to dismiss. This appeal followed.

## II. Standard of Review

■ We review a trial court's decision on a motion to dismiss a health care liability claim under the expert report provisions of chapter 74 of the Texas Civil Practice and Remedies Code for an abuse of discretion. *See Kelly v. Rendon,* 255 S.W.3d 665, 671–672 (Tex.App.-Houston [14th Dist.] 2008, no pet.). To determine whether a trial court abused its discretion, we must decide whether the trial court acted without reference to any guiding rules or principles; in other words, we must decide whether the act was arbitrary or unreasonable. *Cire v. Cummings,* 134 S.W.3d 835, 838–39 (Tex.2004). An appellate court cannot conclude that a trial court abused its discretion merely because the appellate court would have ruled differently in the same circumstances. *See Bowie Mem'l Hosp. v. Wright,* 79 S.W.3d 48, 52 (Tex. 2002).

## III. Analysis

### A. Expert Report Requirements

■ Under Chapter 74's provisions, a health care liability claimant must serve an expert report on each defendant no later than the 120th day after the claim is filed. *See* Tex. Civ. Prac. & Rem.Code Ann. § 74.351(a) (West Supp. 2011). "These reports must identify the 'applicable standards of care, the manner in which the care rendered by the physician or health care provider failed to meet the standards, and the causal relationship between that

failure and the injury, harm, or damages claimed.'" *Ogletree v. Matthews,* 262 S.W.3d 316, 319 (Tex.2007) (quoting Tex. Civ. Prac. & Rem.Code Ann. § 74.351(r)(6)). In deciding whether the statutory standard has been met, the trial court examines only the four corners of the expert's report and curriculum vitae. *Kelly,* 255 S.W.3d at 672.

If a report is served, "[e]ach defendant physician or health care provider whose conduct is implicated ... must file and serve any objection to the sufficiency of the report not later than the 21st day after the date it was served, failing which all objections are waived." Tex. Civ. Prac. & Rem.Code Ann. § 74.351(a). "If an expert report has not been served within [120 days] because elements of the report are found deficient, the court may grant one 30–day extension to the claimant in order to cure the deficiency." *Id.* § 74.351(c) (West 2011); *Ogletree,* 262 S.W.3d at 319. If the trial court determines that the report does not represent a good faith effort to comply with the definition of an expert report, then the trial court must grant a motion to dismiss challenging the adequacy of the report. *See* Tex. Civ. Prac. & Rem.Code Ann. § 74.351(*l*) (West 2011); *Kelly,* 255 S.W.3d at 672.

### B. Waiver

In three related issues, Lucas contends that the trial court abused its discretion in granting Rosemont's amended motion to dismiss because the only objections upon which the court could base its ruling were either waived or withdrawn.[3] We address each of Lucas's arguments below.

#### 1. Rosemont's Objections to Murphy's Qualifications

In her first issue, Lucas contends that Rosemont waived any objection to Mur-

---

**3.** We note that Lucas's issues limit our inquiry to whether Rosemont's objections to Murphy's expert report have been waived, not

whether the objections would have been otherwise valid.

phy's qualifications to testify regarding causation by failing to object within twenty-one days of being served with Murphy's original expert report. Rosemont argues that it had no duty to object to Murphy's qualifications until it was served with Murphy's amended expert report. According to Rosemont, Murphy did not opine regarding causation in her original report and, thus, her testimony regarding causation in her amended report constituted "new" testimony to which Rosemont timely objected in its amended motion to dismiss.[4]

In her original expert report, Murphy opined, in relevant part, as follows:

> It is this reviewer's opinion that Ms. Flowers' condition was not consistently monitored in a prudent and appropriate manner. Nursing documentation did not reveal that adequate/accurate nursing assessments had been performed.
>
> In this reviewer's opinion, and again more likely than not, Ms. Flowers would have not suffered the discomfort, the ant bites, nor the fall had the staff of this facility performed their professional responsibilities in a prudent manner through proper, timely assessments and interventions.
>
> . . . .
>
> [P]roper intervention and support could have been initiated that more likely than not, would have prevented her fall; further these interventions would have prevented Ms. Flowers from exhibiting and suffering an overall decline in condition.
>
> . . . .

> *The staffs' [sic] inactions had a direct impact on Ms. Flowers' decline in condition* (emphasis added).
>
> . . . .
>
> It is my professional opinion that the staff of the Rosemont of Clear Lake failed to assess and document Ms. Flowers' condition. Failure of the staff to carefully and prudently follow up on Ms. Flowers' continued complaints of nervousness, anxiety, pain and overall generalized weakness and discomfort, as well as their failure to implement nursing interventions and failure of the facility to follow and adhere to the rules and regulations mentioned in the Nurse Practice Act *allowed this patient to suffer the consequences of the staff's inactions* (emphasis added).

In its original motion to dismiss, Rosemont argued that

> [n]othing in Murphy's conclusion *explains* what she means by the "consequences of the staff's inactions." The language in the report *lacks sufficient detail* to satisfy the requirements of Chapter 74. *Costello v. Christus*, 141 S.W.3d 245, 249 (Tex.App.-San Antonio 2004, no pet.) (agreeing with the trial court that a report was inadequate as to causation when report failed to explain how the breach caused the injury alleged and noting that inferences were not permitted). Despite the requirements of Chapter 74, Plaintiffs' expert report to Rosemont at Clearlake *lacks an explanation of* the purported link between the standard of care, its alleged breach and the ensuing injury (emphasis added).

---

4. In its amended motion to dismiss, Rosemont objected that Murphy was not qualified to testify regarding causation because she is not a licensed physician. Section 74.403(a) provides, in relevant part, as follows: "[I]n a suit involving a health care liability claim against a physician or health care provider, a person may qualify as an expert witness on the issue of the causal relationship between the alleged departure from accepted standards of care and the injury, harm, or damages claimed only if the person is a physician and is otherwise qualified to render opinions on that causal relationship under the Texas Rules of Evidence." Tex. Civ. Prac. & Rem. Code Ann. 74.403(a) (West 2011).

■ As demonstrated above, in its motion to dismiss, Rosemont challenged the sufficiency of Murphy's opinion regarding the causal relationship between Rosemont's alleged breach of the applicable standards of care and Ms. Flowers's injuries and death.[5] Contrary to Rosemont's assertion, Murphy rendered an opinion regarding causation in her original report—albeit one that the trial court found deficient—and, thus, her testimony regarding causation in her amended report does not constitute "new" testimony.[6]

Rosemont also argues that Murphy's amended expert report supplanted her original report and, therefore, its duty to object to Murphy's qualifications to testify regarding causation was not triggered until her amended report was served. In support of its position, Rosemont relies on *HealthSouth Corp. v. Searcy*, 228 S.W.3d 907 (Tex.App.-Dallas 2007, pet. denied) and *Otero v. Leon*, 319 S.W.3d 195 (Tex. App.-Corpus Christi 2010, pet. denied).

In *Searcy*, the plaintiff filed a nurse's and a doctor's expert reports and curriculum vitae to which the defendants filed objections and a motion to dismiss. *See Searcy*, 228 S.W.3d at 908. The plaintiff then filed amended reports and curriculum vitae, and the defendants again filed objec-tions and a motion to dismiss. *See id.* The plaintiff subsequently filed the doctor's second amended expert report and a response to the defendants' objections and motion to dismiss, after which the trial court denied defendants' objections and motion. *See id.* On appeal, defendants complained about the trial judge's order overruling their objection to the first amended expert reports. *See id.* Noting that an amended filing supplants the previously filed documents, the appeals court concluded that the defendants' failure to object to, or move to strike, the doctor's second amended expert report precluded appellate review. *See id.* at 909.

In *Otero*, the court addressed a situation in which multiple defendants objected to two doctors' initial expert reports filed by the plaintiff, but only one of the three defendants filed objections to one doctor's amended expert report and a second motion to dismiss. *See Otero*, 319 S.W.3d at 198. The court found that the failure of the other two defendants to object to the doctor's amended expert report within twenty-one days of service waived any objection regarding the adequacy of the amended report. *See id.* at 205.

Rosemont's reliance on *Searcy* and *Otero* is misplaced. While it is true that Murphy filed an amended expert report

---

**5.** In its motion to dismiss, Rosemont cites *Costello v. Christus Santa Rosa Health Care Corp.*, 141 S.W.3d 245 (Tex.App.-San Antonio 2004, no pet.), in support of its argument that the language in Murphy's report lacks sufficient detail to satisfy the requirements of Chapter 74. In *Costello*, the appeals court agreed with the lower court that the expert's report was inadequate as to causation because it failed to explain how the alleged breach caused the injury. *See id.* at 249. Here, as in *Costello*, Rosemont's motion to dismiss contested the adequacy of Murphy's report regarding causation.

**6.** In its brief, Rosemont quotes portions of Murphy's amended expert report and concludes that "Nurse Murphy's Amended Expert Report includes causation language for the first time and, therefore, constitutes a new 'matter.'" To the contrary, a report's adequacy does not depend on whether the expert uses any particular "magical words." *Wright*, 79 S.W.3d at 53 (concluding that nothing in Act's plain language suggests that expert's report had to express causal relationship in terms of "reasonable medical probability"); *Costello*, 141 S.W.3d at 249 (noting that no particular term or phrase is required for an expert to establish causation). Thus, the mere absence of the words "cause" or "causation" in Murphy's original report does not render her report inadequate on the issue of causation.

after the trial court granted Lucas a thirty-day extension to cure the deficiencies in the original report, this fact did not absolve Rosemont of the duty to "file and serve *any* objection to the sufficiency of [Murphy's original] report not later than the 21st day after the day it was served...." Tex. Civ. Prac. & Rem.Code Ann. § 74.351(a) (emphasis added). To conclude otherwise would mean that a health care liability defendant could avoid the consequences of its failure to timely object to the adequacy of an expert's opinion in each instance where the expert files an amended report. Rosemont's argument is contrary to the clear language of the statute. *See id.* § 74.351(a) ("Each defendant physician or health care provider whose conduct is implicated in a report must file and serve any objection to the sufficiency of the report not later than the 21st day after the day it was served, failing which all objections are waived.").

■ Rosemont's objection that Murphy is not qualified to render an opinion regarding causation because she is not a licensed physician is an objection to the sufficiency of Murphy's report. *See Ogle-*

*tree,* 262 S.W.3d at 322. Rosemont was therefore required to object on this basis within twenty-one days of being served with Murphy's original report. *See* Tex. Civ. Prac. & Rem.Code Ann. § 74.351(a).[7] Having failed to do so, Rosemont waived its objection and was not entitled to dismissal of Lucas's claim on this ground. *See Ogletree,* 262 S.W.3d at 322 (finding that hospital's failure to object within twenty-one day statutory period to expert report on sufficiency grounds, including that nurses were not qualified to render opinion as to causation, waived objections).

### 2. Rosemont's Objections to the Sufficiency of Murphy's Opinions

In her second issue, Lucas contends that Rosemont waived any objections to the substantive sufficiency of Murphy's opinions regarding the elements of breach and causation. Lucas argues that although Rosemont objected to Murphy's opinions regarding these elements in its original motion to dismiss, it omitted the objections in its amended motion to dismiss and, in doing so, waived them.

---

**7.** Although Lucas served Murphy's curriculum vitae on Rosemont after she had served Murphy's original expert report, Murphy's qualifications were included within the body of her expert report. In her report, Murphy details her qualifications as follows:

> I am a registered nurse by the State of Texas and board certified in gerontological nursing by the American Nurses' Credentialing Center. I have over thirty-five years of extensive experience as a registered nurse involving the care of individuals in hospital and critical care environments, in the long-term care and assisted living environments, and in the management and supervision of all levels of staff. I am currently a faculty member of the Department of Vocational Nursing at San Jacinto College, north campus.

"[T]he purpose of the curriculum vitae requirement is to permit the trial court to perform its 'gatekeeper' function by assessing the

qualifications, experience, and expertise of the expert." *See Univ. of Tex. Med. Branch at Galveston v. Simmons,* No. 14–09–00246–CV, 2009 WL 4810296, at *3 (Tex.App.-Houston [14th Dist.] Dec. 15, 2009, no pet.) (mem. op.) (quoting *Carreras v. Marroquin,* No. 13–05–082–CV, 2005 WL 2461744, at *2 (Tex.App.-Corpus Christi Oct. 6, 2005, pet. denied) (mem. op.)). Murphy's report contained sufficient information to permit the trial court to determine whether she was qualified to testify regarding causation. *See Carreras,* 2005 WL 2461744, at *2 (concluding that expert's report which did not include curriculum vitae as separate document but which stated "I am Board Certified," "I am a Certified Medical Review Officer," and "I am a Certified Independent Medical Examiner" provided sufficient information to allow trial court to determine whether expert was qualified). Further, Murphy's report fairly apprised Rosemont of the fact that she was not a licensed physician.

Under the "Argument and Authority" section in its original motion to dismiss, Rosemont asserted that Murphy's original expert report failed to comply with Chapter 74's substantive requirements because it did not (1) explain how Rosemont breached the applicable standards of care or (2) state the causal relationship between its alleged breach and Ms. Flowers's ensuing injuries and death. Under the "Argument and Authority" section in its amended motion to dismiss, Rosemont argued that Murphy's amended expert report failed to meet the statutory requirements because Murphy is a nurse and, therefore, not qualified as an expert to render an opinion regarding causation. Lucas argues that Rosemont withdrew its objections to the sufficiency of Murphy's opinions regarding breach and causation by omitting them in its amended motion. We disagree. Under the "Background" section in its amended motion, Rosemont stated as follows:

> Plaintiffs produced the report of Robbie L. Murphy, R.N.C., B.S.N. on January 13, 2010.... Although the report was timely[ ], it failed to comply with Chapter 74's substantive requirements. Consequently, Rosemont at Clearlake filed a Motion to Dismiss and at the hearing on Rosemont at Clearlake's Motion, this Court ordered that Plaintiffs had until March 31, 2010 to cure the deficiencies sited [sic] by Rosemont at Clearlake in its Motion to Dismiss.... Plaintiffs served an Amended Expert Report of Nurse Murphy on March 30, 2010; *however, Plaintiffs have failed to cure the deficiencies as required by this Court's Order* (emphasis added).

In its conclusion, Rosemont stated

> Plaintiffs have failed to produce an expert report by a qualified expert as required under Tex. Civ. Prac. and Rem. Code Chapter 74 *that states the causal relationship between the purported fail-*

*ure of the standard of care of Rosemont of Clearlake with regard to the ant bites, Ms. Flowers' subsequent fall and Ms. Flowers' death almost a year later.* The absence of such an opinion constitutes a fatal defect in the statutorily required expert opinion; therefore, this case should be dismissed (emphasis added).

Although Rosemont does not present its objections to the substantive sufficiency of Murphy's opinions regarding the elements of breach and causation in the same manner as it did in its original motion, we conclude, based on the excerpts above, that Rosemont did not withdraw those objections in its amended motion to dismiss. Because the trial court's decision to grant Rosemont's motion can be affirmed on this basis, we hold that the trial court did not abuse its discretion by granting Rosemont's amended motion to dismiss. We overrule issues one through three.

### IV. Conclusion

We affirm the judgment of the trial court.