

# Fourth Court of Appeals
## San Antonio, Texas

## MEMORANDUM OPINION

No. 04-20-00097-CV

Yvonne **JACQUEZ** and the Estate of Victor Jacquez,
Appellants

v.

**VHS SAN ANTONIO PARTNERS, LLC**, and Tenet Healthcare Corporation,
Appellees

From the 407th Judicial District Court, Bexar County, Texas
Trial Court No. 2019-CI-04112
Honorable Karen H. Pozza, Judge Presiding

Opinion by:     Rebeca C. Martinez, Chief Justice

Sitting:        Rebeca C. Martinez, Chief Justice
                Patricia O. Alvarez, Justice
                Liza A. Rodriguez, Justice

Delivered and Filed: January 6, 2021

AFFIRMED

Yvonne Jacquez and the Estate of Victor Jacquez appeal the trial court's judgment dismissing their health care liability claim against VHS San Antonio Partners, LLC and Tenet Healthcare Corporation. We affirm the trial court's judgment.

### FACTUAL AND PROCEDURAL BACKGROUND

Yvonne Jacquez and the Estate of Victor Jacquez filed a health care liability claim against North Central Baptist Hospital, Baptist Health System, VHS San Antonio Partners, LLC, Tenet Healthcare Corporation, Brittane Lebeaux Williams, and Jennifer Robbin Rushton, M.D. on March

1, 2019.[1] Appellants alleged that Victor Jacquez sustained personal injuries when he was dropped while being transferred from the emergency room to another hospital room at North Central Baptist Hospital and subsequently died.

Appellants filed the expert report of physician and surgeon Charles Esterlein, D.O. with their petition. Appellees answered and, on August 26, 2019, moved to dismiss, arguing that appellants had failed to comply with the statutory requirement of section 74.351(a) of the Texas Civil Practice and Remedies Code because they failed to serve Dr. Esterlein's curriculum vitae within 120 days of filing their original petition. Appellees alternatively argued that Dr. Esterlein's report failed to function as both an expert report and curriculum vitae because it failed to set forth sufficient information concerning his expert qualifications. In response, appellants argued the appellees had waived their objections by filing their motion to dismiss more than twenty-one days after appellants' expert report was served. Appellants also argued that appellees' objections fail on the merits because Dr. Esterlein's expert report establishes his qualifications to render his opinions. Alternatively, appellants sought an extension to cure the complained-of deficiencies. At the ensuing hearing on the motion, appellees further argued that the twenty-one-day period for appellees to file their objections was not triggered because appellants failed to serve the curriculum vitae.

On September 16, 2019, the trial court granted appellants a thirty-day extension to cure the report. On October 15, 2019, appellants filed Dr. Esterlein's curriculum vitae and supplemental report. On October 17, 2019, appellees again moved to dismiss, arguing that Dr. Esterlein's curriculum vitae and supplemental report still failed to establish that Dr. Esterlein was actively practicing medicine and qualified to offer expert medical opinions. Appellants responded that the

---

[1] VHS San Antonio Partners, LLC and Tenet Healthcare Corporation are the only defendants involved in this appeal.

case provided good reason under Section 74.402(d) of the Texas Civil Practice and Remedies Code to admit Dr. Esterlein's expert testimony because his opinions were based on standards of care and causation which are generally recognized throughout the medical community and are not specialized. Appellants also asserted that the allegations of negligence were based on a common law standard and did not require expert testimony.

On January 14, 2020, after the hearing, the trial court dismissed appellants' suit with prejudice. Appellants appeal.

## STANDARD OF REVIEW

We review a trial court's decision on a motion to dismiss a health care liability claim under the expert report provisions of chapter 74 for an abuse of discretion. *Am. Transitional Care Ctrs. of Tex., Inc. v. Palacios*, 46 S.W.3d 873, 875 (Tex. 2001); *Savaseniorcare Admin. Servs., L.L.C. v. Cantu*, No. 04-14-00329-CV, 2014 WL 5352093, at *1 (Tex. App.—San Antonio Oct. 22, 2014, no pet.) (mem. op.). A trial court abuses its discretion if it acts arbitrarily, unreasonably, or without reference to any guiding rules or principles. *Bowie Mem'l Hosp. v. Wright*, 79 S.W.3d 48, 52 (Tex. 2002); *Cantu*, 2014 WL 5352093, at *1.

## CURRICULUM VITAE REQUIRED TO TRIGGER DEADLINE FOR OBJECTIONS

Appellants first argue the trial court erred in granting appellees' motion to dismiss because they waived their right to object to Dr. Esterlein's expert report by failing to file their objections within the twenty-one-day period permitted by section 74.351(a) of the Texas Civil Practice and Remedies Code. Appellees counter that appellants' affidavit failed to trigger the twenty-one-day period because it was not accompanied by a curriculum vitae. We agree with appellees.

"In a health care liability claim, a claimant shall, not later than the 120th day after the date each defendant's original answer is filed, serve on that party or the party's attorney one or more expert reports, with a curriculum vitae of each expert listed in the report for each physician or

health care provider against whom a liability claim is asserted." TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(a). "Each defendant physician or health care provider whose conduct is implicated in a report must file and serve any objection to the sufficiency of the report not later than the later of the 21st day after the date the report is served or the 21st day after the date the defendant's answer is filed, failing which all objections are waived." *Id.* "'Expert report' means a written report by an expert that provides a fair summary of the expert's opinions as of the date of the report regarding applicable standards of care, the manner in which the care rendered by the physician or health care provider failed to meet the standards, and the causal relationship between that failure and the injury, harm, or damages claimed." *Id.* § 74.351(r)(6). "To qualify as an expert report under the statute, the report must contain the [statutorily-required] elements, and the expert report must be accompanied by a curriculum vitae of the expert authorizing the report." *Pena v. Methodist Healthcare Sys. of San Antonio, Ltd.*, 220 S.W.3d 52, 53 (Tex. App.—San Antonio 2006, no pet.) (citing *Alvarado v. Alecozay*, No. 06-05-00042-CV, 2005 WL 2179573, at *2 (Tex. App.—Texarkana Sept. 9, 2005, pet. denied) (mem. op.)).

We held in *Pena* that the twenty-one day period for a defendant health care provider to object to the sufficiency of an expert report is not triggered until the claimant has served both the report and a curriculum vitae of each expert listed in the report, as required by section 74.351(a). *See id.* at 54 (holding that the twenty-one day period for a defendant health care provider to object to the sufficiency of a report is not triggered until a claimant has served both the report and a curriculum vitae of each expert listed in report); *see also Francis v. Select Specialty Hosp.*, No. 01-04-01186-CV, 2005 WL 2989489, at *3 (Tex. App.—Houston [1st Dist.] Nov. 3, 2005, no pet.) (mem. op.) ("[B]ecause there is no evidence in the record that Sharon filed her expert report with the trial court or otherwise provided Select Specialty with an expert report, the 21-day deadline by which a health care provider must file and serve its objections to the sufficiency of such a report

was not triggered."); *cf. Sherrill v. Williams*, No. 05-14-00847-CV, 2015 WL 1910015 (Tex. App.—Dallas Apr. 28, 2015, pet. filed) (holding the defendants waived their objections because they failed to file objections within twenty-one days after they answered, when the plaintiffs had previously filed both an expert report and curriculum vitae).[2]

Here, it is undisputed that appellants failed to serve a curriculum vitae for Dr. Esterlein. On March 1, 2019, Appellants filed their original petition with Dr. Esterlein's expert report attached. Appellees answered on April 2, 2019, the other defendants answered on April 4, 2019, thus Dr. Esterlein's curriculum vitae was due to be served 120 days later. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(a). However, appellants failed to supplement their report with a curriculum vitae until after appellees filed their motion to dismiss. Therefore, the twenty-one day deadline outlined in the Texas Civil Practice and Remedies Code was never triggered, and appellees did not waive their objections to Dr. Esterlein's expert report. *See id.*; *Pena*, 220 S.W.3d at 54.

## EXPERT REPORT

In their second issue, appellants argue the trial court erred in refusing to allow their expert report and testimony.[3] They argue that although Dr. Esterlein's qualifications may not meet the statutory requirements for an expert set forth in Section 74.402(a)–(c), there is "good reason" to admit his testimony under the exception set forth in Section 74.402(d) because of Dr. Esterlein's

---

[2] Section 74.351(a) was amended on September 1, 2013, but the amendment does not alter this or the *Pena* analysis. *See Pena*, 220 S.W.3d at 54. The current version of subsection (a) now requires that a claimant "not later than the 120th day after the date *each defendant's original answer is filed, serve on that party* or the party's attorney one or more expert reports, with a curriculum vitae of each expert listed in the report." TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(a) (emphasis added). The amendment did not alter the requirement that a curriculum vitae be served with the expert report. *See id.*

[3] There are two reports for Dr. Esterlein in this case. We refer to Dr. Esterlein's second report in our analysis because this was the revised report that the appellants filed with Dr. Esterlein's curriculum vitae after the trial court gave them 30 days to cure the deficiencies in their original filing. *See Otero v. Leon*, 319 S.W.3d 195, 205 (Tex. App.—Corpus Christi 2010, pet. denied) ("An amended expert report served after a thirty-day extension granted by the trial court supercedes the initial report filed by the claimant." (citing *HealthSouth Corp. v. Searcy*, 228 S.W.3d 907, 909 (Tex. App.—Dallas 2007, no pet.)).

general experience as an emergency room physician, which crosses all disciplines and medical settings. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 74.402(a)–(d). The appellees respond that Dr. Esterlein's report and curriculum vitae show that he is not qualified to render an expert opinion in this case because he was not practicing medicine at the time the claim arose or at the time he wrote the expert report, he is not board certified in any specialty of medicine, and his report fails to explain his knowledge or qualifications on accepted standards of health care, breach of those standards, or causation. *See id.* §§ 74.351(r)(5); 74.402(a)–(c). We hold that the trial court did not abuse its discretion in refusing to allow the expert report and testimony.

*A. Qualifications to Render an Expert Opinion on Standard of Care and Breach*

Appellants argue Dr. Esterlein's prior experience as an emergency room physician allows him to testify on the standard of care applicable to this case. For an expert report to satisfy section 74.351, the author of the report must be qualified to render the opinions made in the report. *See id.* § 74.351(r)(5). The author's qualifications must appear in his report or curriculum vitae and cannot be inferred. *Baylor Coll. of Medicine v. Pokluda*, 283 S.W.3d 110, 117 (Tex. App.—Houston [14th Dist.] 2009, no pet.).

To be qualified as a medical expert on whether a hospital departed from an accepted standard of health care, the proffered expert must satisfy the requirements of Section 74.402 of the Civil Practice and Remedies Code. *See* TEX. CIV. PRAC. & REM. CODE ANN. §§ 74.351(r)(5)(B), 74.402. Section 74.402 provides that:

> (b) In a suit involving a health care liability claim against a health care provider, a person may qualify as an expert witness on the issue of whether the health care provider departed from accepted standards of care only if the person:
>
>> (1) is practicing health care in a field of practice that involves the same type of care or treatment as that delivered by the defendant health care provider, if the defendant health care provider is an individual, at the time the testimony is given or was practicing that type of health care at the time the claim arose;

(2) has knowledge of accepted standards of care for health care providers for the diagnosis, care, or treatment of the illness, injury, or condition involved in the claim; and

(3) is qualified on the basis of training or experience to offer an expert opinion regarding those accepted standards of health care.

*Id.* § 74.402(b).

In determining whether a witness is qualified on the basis of training and experience, courts consider whether, at the time the claim arose or at the time the testimony is given, the witness (1) is certified by a licensing agency of one or more states of the United States or a national professional certifying agency, or has other substantial training or experience, in the area of health care relevant to the claim; and (2) is actively practicing health care in rendering health care services relevant to the claim. *Id.* § 74.402(c). "Practicing health care" includes training health care providers in the same field as the defendant health care provider at an accredited educational institution or serving as a consulting health care provider and being licensed, certified, or registered in the same field as the defendant health care provider. *Id.* § 74.402(a). A plaintiff offering medical testimony must establish that the expert has expertise regarding "the specific issue before the court which would qualify the expert to give an opinion on that particular subject." *Martinez-Partido v. Methodist Specialty & Transplant Hosp.*, 327 S.W.3d 274, 278 (Tex. App.—San Antonio 2010, no pet.) (citing *Broders v. Heise*, 924 S.W.2d 148, 153 (Tex. 1996)). The analysis focuses on "the very matter" on which the expert is to give an opinion. *Id.*

The "matter" upon which Dr. Esterlein offered his opinions focused on the care Victor Jacquez received at the hospital and the protocol that the hospital employees followed or should have followed after they dropped him. Dr. Esterlein opined in his report that the hospital employees "had a duty and a responsibility to report to [Victor's] treating physicians that the patient had been dropped, as this was a significant factor to the physicians in assessing the patient."

Dr. Esterlein also opines that "dropping a patient on his head hard enough to cause a spinal fracture and failing to report it does not meet the appropriate standard of care," and that "the appropriate standard of care has always been and remains that failure to report an incident such as this to the appropriate physicians or to note this trauma in the medical records does not meet the appropriate standard of care." Therefore, the subject-matter of Dr. Esterlein's opinion is not just the general communication protocols within the hospital, but on how the hospital employees should have reported Victor's drop to his treating physicians due to the severity of the drop and Victor's condition following the drop. *See Martinez-Partido*, 327 S.W.3d at 278–79 (ascertaining the "matter" upon which the expert offered his opinion in order to determine whether the expert was qualified to opine on the specific matter).

With the subject-matter of Dr. Esterlein's opinion in mind, we hold that the information provided in his curriculum vitae and report do not meet the second and third statutory requirement to allow Dr. Esterlein to opine on this matter. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 74.402(b)(2)–(3); *see also Foster v. Zavala*, 214 S.W.3d 106, 114–16 (Tex. App.—Eastland 2006, pet. denied) (determining that an expert was not qualified to render an opinion because he did not meet the any of the three requirements in Section 74.402(b)). The second requirement, which is stated in Section 74.402(b)(2), requires Dr. Esterlein to demonstrate in his report and curriculum vitae that he "has knowledge of accepted standards of care for health care providers for the diagnosis, care, or treatment of the illness, injury, or condition involved in the claim." TEX. CIV. PRAC. & REM. CODE ANN. § 74.402(b)(2). The diagnosis and treatment in this case involved the diagnosis and treatment of Victor after he was dropped. Although Dr. Esterlein asserts that he is familiar with the usual standard of care for an emergency hospital such as North Central Baptist Hospital, nothing in his report or in his curriculum vitae reveals how he became familiar with this standard of care. *See Ibrahim v. Gilbride*, No. 14-09-00938-CV, 2010 WL 5064430, at *6–8 (Tex.

App.—Houston [14th Dist.] 2010, no pet.) (concluding that expert was not qualified to render expert opinion because general and conclusory statements in his report failed to describe how he acquired sufficient knowledge, skill, experience, training or education to opine on the accepted standard of care and his curriculum vitae did not supply the missing information). For example, the documents show that Dr. Esterlein has been retired since 2010, but his report states that the standard of care relevant to the case at the time of the incident in March 2017 "has not changed since [he] began practicing emergency room medicine in 1990," without explaining a basis for this assertion. The documents fail to show that Dr. Esterlein is board certified in emergency room training or in the neurological and physiological issues he opines on, and they fail to indicate how Dr. Esterlein has specialized knowledge of these topics. *See Savaseniorcare Admin. Servs.*, 2014 WL 5352093, at *3 (holding that an expert was not qualified to render an opinion focusing on a nursing and physical therapy facility's personnel dropping a patient and failure to follow proper protocol after dropping the patient because the expert's report and curriculum vitae failed to demonstrate how he was qualified to render this specific expert opinion); *Ibrahim*, 2010 WL 5064430, at *6 ("The test is whether the report and CV establish the witness's knowledge, skill, experience, training, or education regarding the specific issue before the court that would qualify the expert to give an opinion on the subject at issue" (citing *Broders*, 924 S.W.2d at 153)). We find that the trial court did not abuse its discretion to dismiss the case based on a failure to establish the second requirement, stated in Section 74.402(b)(2).

The third requirement of Section 74.402(b)(3) requires that Dr. Esterlein demonstrate that he is "qualified on the basis of training or experience to offer an expert opinion regarding those accepted standards of health care." TEX. CIV. PRAC. & REM. CODE ANN. § 74.402(b)(3). In determining whether Dr. Esterlein was qualified on the basis of training or experience, the legislature mandated that we consider two factors: 1) whether the expert is certified by a licensing

agency or has other substantial training or experience in the relevant area of health care; and 2) whether the expert is actively practicing health care in rendering health care services relevant to the claim. *Id.* § 74.402(c).

Dr. Esterlein's curriculum vitae and report do not indicate that he was certified in any area of medicine or that he has any other substantial training or experience in an area of medical practice relevant to this claim. Nor do the documents demonstrate that Dr. Esterlein was actively practicing health care in rendering medical care and treatment to emergency room patients who had experienced trauma, neurological, or cardiac issues due to incidents such as being dropped. While Dr. Esterlein previously practiced in the emergency room setting and may have seen patients who experienced such issues, this general experience does not make him an expert in the specific matters of trauma and head injury relevant to this case. *See Wigley v. Shannon Med. Ctr.*, No. 03-17-00086-CV, 2017 WL 5985501, at *5 (Tex. App.—Austin Dec. 1, 2017, no pet.) (holding that an expert's opinions were properly excluded because the trial court was not required to infer from the expert's general familiarity with pressure ulcers in other contexts that he was qualified to address pressure ulcers that develop in a trauma and ICU context). Having considered the factors set forth in Section 74.402(c), we find that the trial court reasonably could have concluded that Dr. Esterlein's report and curriculum vitae had not demonstrated that he was qualified on the basis of training or experience, as required by Section 74.402(b)(3).

Finally, appellants argue that this Court should follow its prior holding in *Martinez-Partido* and hold that the expert in this case is qualified to opine on the need to properly communicate a patient's medical history because it crosses all disciplines and medical settings. *See Martinez-Partido*, 327 S.W.3d at 280. The subject-matter in *Martinez-Partido* focused on what should have been done to ensure a patient's medical history was properly communicated. *See id.* at 278 ("Dr. Adler's opinions do not focus on the medical treatment appellant received or should have

received[, i]nstead, Dr. Adler focuses on a break-down in communications that led to the failure to deactivate the AMS 800 before trying to insert a catheter."). The expert in *Martinez-Partido* also was an actively practicing physician with an emphasis in emergency health care at the time the claim arose and when he opined on the matter, and he had extensive experience as a medical director who supervised hospital personnel. *See id.* at 279–80; *see also* TEX. CIV. PRAC. & REM. CODE ANN. § 74.402(c)(2) (determining whether an expert is "actively practicing health care" as a factor in assessing whether he is qualified to render an opinion). Here, however, Dr. Esterlein is not only opining on general communication protocols within the hospital, but more specifically that dropping a patient on his head with enough force to fracture his spine is negligent and that failure to report this trauma to the treating physicians overseeing his care is negligent and below the standard of care. He also opines on the neurological and physiological responses that Victor may have had because of this drop. In addition, even if this case solely focused on the general issue of communicating a patient's medical history, Dr. Esterlein's report and curriculum vitae do not demonstrate that he has the extensive administrative experience that the expert in *Martinez-Partido* had. *See Martinez-Partido*, 327 S.W.3d at 280 (providing the expert's extensive administrative experience when he was responsible for overseeing and supervising hospital personnel). This case is more similar to our prior case, *Savaseniorcare Admin. Services*, in which this Court held that an expert was not qualified to render an opinion that the employees at a nursing and physical therapy facility were negligent "in the handling and dropping of" the patient and "in not reporting the incident or following proper protocol" after the incident. *Savaseniorcare Admin. Services, L.L.C.*, 2014 WL 5352093, at *3.

We conclude that the trial court did not err in refusing to allow Dr. Esterlein's expert report and testimony because his report and curriculum vitae do not necessarily meet the requirements of section 74.402(b)(2) and (b)(3), so as to allow Dr. Esterlein to testify as to the standard of care.

### B. The "Good Reason" Exception Under Section 74.402(d)

Appellants contend that, even if Dr. Esterlein does not meet the statutory requirements set forth in Section 74.402(a)–(c), there is "good reason" to admit his report and testimony under Section 74.402(d) based on Dr. Esterlein's general experience as an emergency room physician and based on his broad opinion that it is below the standard of care to drop a patient and not communicate the incident to the treating physicians. Section 74.402(d) states that the court shall apply the criteria set forth in subsection a, b, and c in "determining whether an expert is qualified to offer expert testimony on the issue of whether the defendant health care provider departed from accepted standards of health care," but that the court may "depart from those criteria if, under these circumstances, the court determines that there is good reason to admit the expert's testimony." TEX. CIV. PRAC. & REM. CODE ANN. § 74.402(d). "The court shall state on the record the reason for admitting the testimony if the court departs from the criteria." *Id.* Here, the trial court did not admit the testimony and failed to mention Section 74.402(d) at the hearing.

Courts seldom use the section 74.402(d) exception to admit an expert's testimony, and, when done, courts state their reason, as required. *See id.*; *Hendryx v. Duarte*, No. 09-18-00070-CV, 2019 WL 1065052, at *7 (Tex. App.—Beaumont Mar. 7, 2019, no pet.) ("The trial court's decision to relax the active practice requirement is stated on the record"); *Packard v. Guerra*, 252 S.W.3d 511, 532–33 (Tex. App.—Houston [14th Dist.] 2008, pet. denied) (affirming a trial court's use of Section 74.402(d)'s "good reason" exception when allowing a non-physician expert in legal and corporate contracts to opine due to such testimony not being found within the experience of a typical physician otherwise qualified to render a report in the case); *cf. Martinez-Partido*, 327 S.W.3d at 280 (holding that an expert was qualified to opine on a matter that crossed all disciplines and medical settings pursuant to Section 74.402(a)–(c), and not considering Section 74.402(d)'s "good reason" exception). Because the trial court failed to mention this exception at the hearing

and because the circumstances are not such that a failure to find good reason would be an abuse of discretion, we hold that the trial court did not err when it dismissed for Dr. Esterlein's lack of qualifications to opine on the matter. *See Packard*, 252 S.W.3d at 532–33.

### C. Qualifications to Render an Expert Opinion on Causation

Appellants also argue that Dr. Esterlein was qualified to opine on the causation issue in this case because of his years of working in emergency rooms dealing with trauma victims and his knowledge of human anatomy. An expert report must contain information concerning the expert's opinion on the causal relationship between the alleged breach and the injury, harm, or damages claimed. TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(r)(6). Section 74.351 requires "a person giving opinion testimony about the causal relationship between the injury, harm, or damages claimed and the alleged departure from the applicable standard of care in any health care liability claim" to be qualified under the Texas Rules of Evidence. *Id.* § 74.351(r)(5)(C); *see* TEX. R. EVID. 702. Texas Rule of Evidence 702 states: "A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue." TEX. R. EVID. 702.

There are no definitive guidelines for determining whether a witness's education, experience, skill, or training qualify him as an expert. *State v. Northborough Ctr., Inc.*, 987 S.W.2d 187, 193 (Tex. App.—Houston [14th Dist.] 1999, pet. denied). The party offering the witness as an expert must establish that the witness is qualified to testify under Rule 702 by demonstrating the witness has expertise concerning the actual subject matter about which the party is offering an opinion. *Broders*, 924 S.W.2d at 152–53.

As to causation, Dr. Esterlein's report states:

> [B]ased on reasonable medical probability, the most direct cause of Mr. Jacquez['s] death is that he was dropped while being transferred from a gurney to a bed and striking his head with enough force to fracture his spine. The attending nurses and hospital personnel had a duty and a responsibility to report to his treating physicians that the patient had been dropped, as this was a significant factor to the physicians in assessing the patient.

As described above, the report fails to demonstrate the witness is qualified to testify with expertise concerning the subject matter for which he was presented. Dr. Esterlein's documents indicate that he has not practiced medicine or rendered health care services relevant to this case since 2010, and he is not board certified in any specialty of medicine. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 74.402(c)(2). His report fails to establish that he would have sufficient knowledge, skill, experience, training, or education to express an opinion regarding the cardiac, neurological, and physiological conditions he opines on in his causation conclusion. *See Methodist Hosps. v. Winn*, 496 S.W.3d 148, 152–53 (Tex. App.—Dallas 2016, no pet.) (holding that an expert's report and curriculum vitae failed to show that he was qualified to opine on a hospital's treatment and monitoring of a patient and supervision of hospital's employees because he was not actively practicing health care in rendering health care services relevant to these claims and failed to show how he had knowledge or experience to render an opinion on the claims). Dr. Esterlein merely offers that he has "kept abreast of the current medical standards regarding diagnosis and treatment of patients presenting at an ER in an emergency room facility, including neurological issues, trauma issues, and cardiac issues that are applicable in treating an emergency room patient." We conclude that appellants failed to establish that their expert witness was qualified under Rule 702 and therefore their expert cannot render an opinion on causation in this case pursuant to section 74.351(r)(5)(C). *See Collini v. Pustejovsky*, 280 S.W.3d 456, 466–67 (Tex. App.—Fort Worth 2009, no pet.) (holding that the trial court erred in failing to dismiss the health care liability claim

because the expert report did not demonstrate that the expert was qualified to testify about causation); *see also* TEX. CIV. PRAC. & REM. CODE § 74.351(r)(5)(C).[4]

### CONCLUSION

We conclude that the trial court did not abuse its discretion when it granted appellees' motion to dismiss. We affirm the trial court's order granting appellees' motion to dismiss.

Rebeca C. Martinez, Chief Justice

---

[4] The 74.402(d) exception explained above does not address an expert's qualifications to testify about causation, and therefore is irrelevant to the analysis. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 74.402(d); *Alsup v. Hickory Trail Hosp.*, No. 05-16-00527-CV, 2017 WL 1046769, at *9 (Tex. App.—Dallas Mar. 20, 2017, no pet.).